This is the United States v. Davila, 21-2836. Mr. Shelley. Morning, sir. How are you? Good morning. I'm doing well. How are you? Great, thanks. May it please the Court, my name is Ryan Shelley and I represent the appellant, Mr. De Villa. I would like to request two minutes for rebuttal and an additional two minutes at the end for my supervisor, Mr. Ulrich. Absolutely. If he feels necessary, right? Whatever you're ready. The parties are in agreement that the sole issue before this Court is whether the District Court abused its discretion in concluding that the Section 3553A factors weighed against granting Mr. De Villa's motion for compassionate release and denying the motion on that basis. The text of the Court's order makes clear that it did abuse its discretion in its weighing of the factors by one, failing altogether to consider the need for its sentence to provide Mr. De Villa with needed medical care in the most effective manner as required by 3553A2D. What would be the most effective manner here? The record shows statements from the warden saying that, at least in the warden's opinion, the condition that your client is in can be treated adequately in the facility. So what would be the, quote, most effective? Can you go to Sinai or bring in an internationally renowned renal specialist? What are you saying should be done? So because Mr. De Villa has, you know, renal failure and a number of other serious medical conditions and it's undisputed that the prison system is a dangerous environment given the pandemic and the Court itself acknowledged that concern when it found that... Has the pandemic landscape changed considerably over the last, say, 18 months? And if it has, how do we square that with Mr. De Villa's situation? So the District Court's finding that the threat of the pandemic presenting an extraordinary and compelling circumstance in Mr. De Villa's case is undisputed and any change in circumstance, I would think, would perhaps be a question, a factual question for the District Court to consider on remand. Now, I'm surprised you said it's evident from the District Court's reasoning that it failed to consider needed medical care. The second sentence is, Mr. De Villa's serious medical condition, as well as the fact that people in his facility have already died of COVID-19, a number that's changed dramatically in the last three years, shows he faces a concrete and reasonable fear beyond pure speculation of contracting and dying from COVID-19 while in prison. He's aware of the renal failure and our 3553 rulings routinely say, you don't have to recite everything in detail that you considered. I see you're nodding with me. So we're not making some kind of check the box, you have to read everything into the record ruling. So how is it you can say it's evident from this that they failed to consider this need for medical care treatment? So in this circumstance, the District Court's finding of extraordinary and compelling circumstance was narrowly focused on the possibility that Mr. De Villa could die should he contract COVID-19. The 3553. But it says serious medical condition as well as. So it's saying A and B. I mean, you could read it that way, but it's quite plausible to read it as experienced judge recites a number of factors and you're squinting at it and then saying he was unreasonable for not articulating the broader reading of it. I read the court's order as focused on the possibility that Mr. De Villa could die should he contract COVID-19. Whereas the applicable 3553A factor here is broader than that and requires the court to consider whether the sentence it's imposing meets Mr. De Villa's medical needs in the most effective manner. So in Mr. De Villa's case, he's been on dialysis since 2007. He requires triweekly dialysis. He's getting all that, right? So what is the most effective manner, circling back to what Judge McKee asked you? In the informal brief that Mr. De Villa submitted to this court, he included an informal complaint that he'd filed with the BOP where he described receiving his dialysis treatment in the prison context where the dialysis machine was left unplugged and he was bleeding all over the floor and the situation was only addressed when someone else noticed it and came to his aid. So I think... When did that occur? I believe that was in 2021. But he's been basically receiving dialysis for 16 years and survived. That's pretty good for somebody who's out in the world who's not incarcerated getting medical care. So I think the fact that Mr. De Villa has received dialysis for that amount of time speaks to the severity of his medical conditions. Most people, the average life expectancy once someone begins receiving dialysis treatment is 5 to 10 years, with 60% of people dying within 5 years. So Mr. De Villa's... And the frequency with which Mr. De Villa needs to receive his dialysis treatment has gone up. It's now three times a week, which wasn't the case at his initial sentencing. You know, your first point, and you only got to your first point, was failure to consider need for medical care. We could read this order that way. That's maybe a squinting way of reading it. We could read it as gesturing more broadly. What's your second point? My second point is that in addition to failing to consider this applicable factor, the rest of the district court's consideration of the 3553A factors makes clear that it didn't account for the circumstances surrounding Mr. De Villa's serious medical conditions when it weighed the other factors. So, for example, the district court found, emphasized the conduct underlying Mr. De Villa's original offense and found that there was still this need to protect the community. No, the first sentence is Mr. De Villa's motion presents a close call, and the second one is the medical one we said, and the third one is he has thus shown an extraordinary compelling circumstance. Now, you want to bifurcate this and say that somehow this was completely segregated from the 3553A factors, but, again, you're squinting. I think read fairly and in context, a busy district judge who's writing one paragraph is showing the Court of Appeals that he gets it. He gets the arguments pro, but then there's a bunch of arguments con. Why should we read it that way? So I agree that there's no bright-line rule about what's required of a district court, and courts often give the district court a lot of leeway in terms of its consideration of the factors, whereas here the movement specifically raises arguments related to specific factors, as was done here. I believe the court has an obligation to address those factors. Now, in a recent case in the Fourth Circuit — So let me ask you, how should the order have been written? I think that the order would have needed to be written in a way that makes clear that in the court's consideration of the 3553A factors, Mr. DeVita's medical needs, which his entire motion was premised on, was given adequate consideration. The judge said, turning to the section 3553A factors, however, the court finds the interest of society strongly militated against permitting DeVita to be. Doesn't that sentence incorporate within it the court's statement that it reviewed the 3553A factors and finds that the trump card here is that the interest of society outweigh the medical needs that it has? At most, we just need to read that as saying, turning to the other 3553A factors, rather than requiring them to reiterate what was said in the first three sentences. I don't think that the judge needed to reiterate what was said in the first three sentences, but whether someone is at risk of dying should they contract COVID-19 is not the same consideration as whether their medical needs are being met by their continued incarceration. And I think the court emphasizing this continued dangerous that Mr. DeVita purportedly presents without considering the fact that three days a week he's receiving dialysis for hours and hours, which leaves him physically debilitated, that significantly mitigates any possible danger he might present. Earlier in your argument, you suggested that this should be remanded to the district court. So let's assume, hypothetically, we remand it to the district court. What sort of record would your office be able to establish or present to the court that might change Judge Rambo's mind? I think evidence that the medical treatment that Mr. DeVita is receiving is inadequate and that he would have the opportunity to receive superior treatment should he be released. When you say it's inadequate, again, he's survived, I was astounded when I read this, given prison food and lack of exercise and everything else, 16 years on dialysis, that's no mean feat. And it sounds like you want them to say that he's got to go to the Mayo Clinic. I'm not quite sure what, given the fact that he has survived this long, this incredibly compromising and life-shortening, not just threatening, condition, isn't your burden on remand almost impossible to make out? Well, I think as you acknowledge in your question, Judge McKee, that a prison environment is not, it's certainly not the best environment for someone who has... When you say best, he doesn't have to get the best medical treatment, does he? He has to get certainly adequate medical treatment. But does he have to get the best? And then you get into the discussion of where could he get the best treatment, which is why I put the Mayo Clinic in my hypothesis. Well, the 3553A factor, at minimum, calls for the district court to consider whether the sentence meets the defendant's medical needs in the most effective manner. So whether Mr. Mc... But wouldn't most effective manner, couldn't that be read as adequate to address his medical concerns as opposed to the best medical treatment? You can't possibly make that argument, can you, that he's entitled to the best possible medical treatment? I agree that the law doesn't require that he receive the best possible medical treatment, but what the law does require is that the district court, at minimum, consider whether his sentence will allow him to receive medical treatment in the most effective manner. Here, the district court... I think what Judge McKee is getting at is the way you are parsing most effective manner sounds like it's ideal, and we're certainly not going to adopt a rule that says that every patient on dialysis gets out of prison. And so then it comes down to, well, you say, well, maybe they didn't consider it, and I think you're expecting a level of draftsmanship in the district court paragraph that we see stuff that's a lot scantier than this on the 3553A records. We're not going to just let a district court get away with ignoring stuff, but this is a thoughtful paragraph here, and I don't know that we should read it as narrowly as you do. Well, Judge Bibas, my response to that would be that when the district court opens its order by acknowledging that this case presents a close call and the parties have specifically made arguments that relate to a specific applicable 3553A factor, the district court, at minimum, has some responsibility to address those arguments in its assessment of the 3553A factors. I see that I'm out of time if the court has no further questions. I just want to ask quickly. It was a close call when COVID was raging. It's still there. It's still a threat, although the guy seems to ignore it. The fact that it's no longer raging, perhaps that should suggest to us it's not even a close call anymore because the thing which seemed to weigh the heaviest on your client's side of the scale was the incredible risk that someone in his condition was facing, incarcerated, during a period of a pandemic when people in his institution were already dying from it. That's off the table now, isn't it? At least, mostly off the table, if not totally off the table. Well, I don't think that the pandemic is off the table, and I think the level of the threat posed by the pandemic within the context of the prisons currently is a factual question that I think would best be left to the district court. Thank you. We'll see how we go. I don't believe I would have anything to add, you know, on what Mr. Shelley has, but I do. Do you want to – you could also make that decision after rebuttal, if you like. Whatever works for you. I wasn't sure what the procedure was. It's a whole new world here. It's good. All of this, actually, was imagining when he wrote his novel. So, you know, after rebuttal, you can reassess if that works for you. Yes, thanks. Good morning, Mr. Ford. Good morning, Your Honor. May it please the Court. My name is Scott Ford, and I represent the United States of America on this appeal. Gentlemen, the district court in this case fully weighed the Section 3553A factors and determined the defendant's sentence should not be reduced. That decision was fully within the court's discretion, as this court has decided time and time again whenever it comes to motions for compassionate release over the past three years. How did the court weigh all of the 35 – all of the applicable – some of the factors aren't really applicable here. Yes, Your Honor. But all of the applicable 3553A factors. The court said, Mr. De Villa thus exhibited a callous disregard for the dangers to human life and its conduct inflicted upon people. It seems to me that is the beginning and end of the court's analysis. It found it was a close call. She found it was a close call. She then found he's shown a compelling and extraordinary circumstance. But then she says, look, based upon his crime, he's not getting the relief he requested. And it seemed to all boil down to his crime and her concern for protecting the public. And she says that in that paragraph. And that's elevating one of the 3553A factors above all others, isn't it? Well, I understand your point, Your Honor. But I believe it's the district court's discretion and it's their duty to balance all of the 3553A factors. And I think that that's one that weighs very heavy in this case. I agree with that. But this is some release from the pleadings. It's not established and maybe we need to send it back to have the record established. But if what he's alleging and arguing is true, this is someone who doesn't pose much of a threat to the public. He's basically an invalid. He's tired. He's weak. And that's not an overstatement for people who get dialysis three days a week. And I've known people in that situation. The days when they are getting dialysis, they're basically wiped out. The days when they're not getting urinalysis, they are so weak and so compromised that they have trouble getting from point A to point B, even walking. It's hard to imagine someone in that state being the kind of threat to society that she imagines when she says, for the sake of protecting the public from further danger, number one. Then she says, and two, ensure that he appreciates the consequences he must face for his crimes. He's already done 20 years in prison. I mean, if he doesn't appreciate the consequences of a crime now, he never will. But that's kind of beside the point. It does seem that she's not really factoring in the VA as he stands now. Is he still really a threat to society, given his medical condition and age? Well, and again, first, Your Honor, I would argue that's within the district court's discretion. And especially— What is within the court's discretion? To look at all the 3553A factors to include the danger to society and make that determination. But in this case, I believe Judge Rambo did look at all the 3553A factors. First, the offense conduct, as you've already pointed out. I believe it was extremely egregious, and I do believe that that's the factor that weighs— That is horrendous. But having said that, I also believe that she also weighed the other factors. The need to provide the defendant with adequate correctional treatment. She states, while he has served a substantial amount of time and has faced no disciplinary punishment in prison, he has not shown the type of remarkable change in character needed to justify— I wanted to ask about that. How does somebody in prison— Are they supposed to organize baked food sales and clothing drives for the homeless? When you're in prison, how do you exhibit the remarkable change in character other than your contact record? Your Honor, I believe we see this on a regular basis. Taking all of the programming available. Helping other inmates. He's doing dialysis three days a week. How much help can he be? Well, Your Honor, I believe what we have here, though, is he is— The absence of bad does not equate to good. The fact that he hasn't had any disciplinary punishment doesn't mean that he's rehabilitated. That's a good point. So how do you show rehabilitation when you're doing dialysis three days a week? And you basically—well, let me stop it there. You're doing dialysis three days a week. You're 51, 52 years old. How do you go about changing that? You are now a new person, a changed person. Your Honor, he's been in for, I believe, almost 20 years. At this point, at no point in any of the briefs that he provided, whether the pro se or the counsel briefs, did we receive any list of all of the programming that he has taken. Mr. Ford. Yes, Your Honor. Does he have any letters from the inmates, from the prison guards, attesting to his change in character? I don't believe so, Your Honor. Has he sent any letters apologizing to the families of the victims he killed or put in a coma? I have not seen any, Your Honor. Okay. He's been in for 20 years and he hasn't been on dialysis the whole time. Correct, Your Honor. Has he submitted anything about what he did during those first four years? Not to my knowledge, Your Honor. Okay. And I do say there are some affidavits, I believe, in one of the briefs, but they're all about the conditions in prison during COVID. But again, Your Honor, to answer your question, I believe, even though it's a short paragraph, I believe Judge Rambo hit several 3553A factors. The ones that I already mentioned. She also said, you know, with regard to the need to provide adequate deterrence to ensure Mr. DeVia appreciates the consequences he must face for his crimes, the court will deny his motion for compassionate release. And I would also point out Judge Rambo used a form for her brief. But it sounds like he's using a formal order here. Yes, Your Honor. And at the beginning of that form, it states, upon motion of the defendant for a reduction in sentence under 18 U.S.C. 3582, and after considering the applicable factors provided in 18 U.S.C. 3553A and the applicable policy statements issued by the Sentencing Commission. Now, I know this is a check to block, but having said that, this court has upheld the use of that form, and that was in the case of the United States v. Robinson, 852F Appendix 699, and that was relying on Chavez Mesa v. United States, which was a 2018 Supreme Court case, and I can give that citation. Chavez is better. We're not. Yes, Your Honor. So that answers for non-presidential opinions, but Chavez makes the point. And my point would be, Your Honor, really based on those decisions, all that's really required is that check to block. Having said that, I don't think anybody would be satisfied if that's all that was done, but that's not what Judge Rambo did in this case. She looked at all of the 3553A factors. She came back, and while it is one paragraph, again, I think it's a very well-drafted, detailed paragraph that hits all of the factors. And additionally, I think it's also important to remember that that opinion was issued in August of 2020, at the very beginning of COVID, and just this defendant himself, in a period of right around 18 months, filed two essential motions for reconsideration. So she had to address this defendant three times, let alone all of the other defendants that are currently in prison that she has sentenced since being appointed to the court in the 1970s. Could you address Mr. Shelley's argument with respect to remanding this case for a more robust factual determination? I don't believe that's necessary, Your Honor. I believe the factual determination has already been done. And I believe, with regard to his point, if there are factors that change things today, all he has to do is file another motion for compassionate release, as this Court knows. That would be based upon conclusions and arguments. And it does seem to me that the court is justifiable, given the callous mentality he had at the time of the crimes, when he's informed people were dying, he went on about selling his drugs, and he was only concerned about whether or not he would be discovered by the police in North Philadelphia. I get her concern. It's appropriate. But if his condition is debilitating, and if he is as compromised physically as the fact of his dialysis and end-term mental disease would suggest, wouldn't it be helpful for the District Court to get evidence to that effect? And what is the harm to the Commonwealth by asking him to put him to the proof? Okay, you say you're so debilitated. Let's have a hearing, bring in medical records, bring in a treating physician from the institution. It may turn out that the doctor will say, well, under three days, for the two or three hours that he's under dialysis, he's out of commission. But once he's off dialysis, he may not be as robust as he would have been absent that treatment. But he's ambulatory, and he's capable of being out and about. That would say to the District Court, well, my concern is well-founded. It's not medicated at all here. Or the physician might say, look, this guy is so debilitated, whether he's on the machine or waiting to get on the machine the next day, that I cannot imagine him, if he's ambulatory, he's barely ambulatory. And the judge might think, okay, well, he's really not a threat to anybody right now. And that's a whole different result. And it seems to me the Commonwealth is not the least bit prejudiced or inconvenienced by that result. Well, Your Honor, and I believe my point would be he had that opportunity. The judge denied it. He now has that opportunity. Did he have a hearing? I'm sorry, Your Honor? He said he had that opportunity. Did he have a hearing?  Oh, I'm sorry. No, he didn't have a hearing. But he had the opportunity to present all of his medical information. The judge heard all of that. The judge denied it. And he has that opportunity right now as we sit, Your Honor. He could file another motion for compassionate release. And, again, the judge would go back and look at it based on the facts today, based on the facts that this individual has already contracted COVID. Now, I couldn't tell you his vaccination status, but I know that things have changed with regard to, at a minimum, they're available to him. We could talk about the position or the number of cases in FMC Devens at this point. All of those factors could weigh in. But that's what's important is should this defendant today, in March of 2023, be released on a motion for compassionate release. You're saying if he were to file another motion with those things, maybe I could hear this from the medical folks at the prison, the commonwealth would not oppose that on the basis that he's already filed three prior petitions and has not done a referral for it. You're saying you would not oppose that. He could file another one. Well, I wouldn't oppose him filing it, Your Honor. I obviously, after looking at the brief, I mean, I'm sure I would have. I'm sorry. Are you saying you would or would not oppose it? Your Honor, I would not oppose him filing another. If he exhausted his administrative remedies, you know, made a request to the warden, waited 30 days, and then filed another one, gentlemen, may I have to tell you, I know a lot of people believe that, you know, the deluge of motions for compassionate release have ended. I personally have responded to three in the past month. We're still getting them. These people are still, you know, these inmates, they're continuing to file motions for reconsideration. What I'm trying to get at is whether or not you would oppose any relief on the, if he were to file another one based upon the fact that he already filed three. No, Your Honor. No, not on that. And, again, Your Honor, just to be clear, yeah, if he filed another motion for compassionate release, and, again, assuming that he met all of his administrative requirements, I would send the email to the Bureau of Prisons, request the medical records, have those medical records come in, go through, do the same analysis that I did on this back in the spring and summer of 2020, and file another one. And I can say that I've done that three times on other cases just in the past month. These motions are still coming. You live a very exciting life, Mr. Ford. Unfortunately, Your Honor, that's just a small portion of what I've done in the past month. But, yeah, no, this is, that's, you know, we're still handling these. We're still taking these on. You know, and, I mean, and, again, they come through the trial attorneys, whoever handled the case. And, you know, that's, I didn't handle this one. I ended up picking this case up from an AUSA who had retired. But that's what, you know, that's how my office is handling it, and I'm pretty sure it's how we're handling it across the country. Mr. Davila's pro se up until the time the circuit appointed the defenders. Is that right? Yes, Your Honor. So, Your Honor, I mean, what happened in this case, again, this was very early on in the system. He filed a motion pro se, and I believe the court sua sponte appointed the public defenders. Then he filed two more. They did not appoint the public defenders. But, again, what I'm seeing, the defendants file the motion if the court believes that, you know, if they haven't already heard from this particular defendant, they'll appoint the public defenders. If the defendant asks for appointment, sometimes they grant that, sometimes they don't. But that opportunity is still available to Mr. Davila. Thank you, Mr. Ford. Thank you, gentlemen. Thank you. Just very briefly to follow up on your question, Judge McKee, about whether Mr. Davila has exhibited the type of change necessary to warrant relief. Mr. Davila has. Before he became too sick to engage in programming, he did complete both residential and non-residential drug abuse treatment. At his initial sentencing, he addressed the families of the victim of his crime, and he apologized and expressed remorse. I think in a case like this where there's a 20-year gap between initial sentencing and the court's consideration of the 3553A factors on a motion for compassionate release and the defendant's motion is premised on circumstances that have changed since the time of his initial sentencing, the court has a greater obligation to engage with those factors and engage with the changed circumstances presented by the move-in. What was the parsimony principle? And that's a principle that's in Turnbull, it's in Oloski. It's kind of there only in theory, even though it's in statute. And in Canada, I don't know how it gets applied. I don't know how one would ever determine the least restrictive sentence that is consistent with the purpose of the sentence. It's almost a metaphysical question. But it certainly does require the court to err on the side of leniency as opposed to harshness. But, again, it's only kind of out there. It's in the ethers, right? It's floating out there. But to what extent would that concept be applicable here? Or is it applicable once you get past the initial sentence? I think it's especially applicable in a case like this where the defendant has served a substantial portion of their sentence. The district court acknowledged that Mr. DiBia has served a substantial portion of his sentence. He's been incarcerated for 22 years on this offense. And in order to—I would argue that that amount of time, in combination with the fact that he's so debilitated and so sick and has an illness with an end-of-life trajectory, means that his sentence at this point has met the— Well, you know, birth has an end-of-life trajectory. And my point was he's basically already beaten the odds. So I'm not sure that's as forceful. Maybe the district court would take another look at that. But I'm not sure that argument is as strong as it is on paper, given the track record he already has of surviving 16 years on dialysis while in prison, which is really astonishing. Well, I think that Mr. DiBia's ability to survive longer than his projected timeline does not mean that he's not still sick. He's still incredibly sick. He's going to die from his renal disease, and most likely in short order. Well, that puts the rabbit in the hat. We all know he's going to be in short order. That's why I was saying that medical testimony might be helpful. He is going to die, probably, of a renal disease, although it might be an intervening cause. But the fact that he's willing to die doesn't get us anywhere, because everybody in this courtroom can make that statement, but we just don't know when. Clearly, I don't want to minimize the situation he's looking at, because it's a really serious life-altering and life-compromising disease. But the thing that, in my mind at least, weighs that less heavily on the scale than it otherwise would is the fact that he's survived somehow in prison, medical regime, for 16 years on prison food and dialysis. I don't know how the hell he did it. Yes, Judge, and I would just note that given his condition, regardless of whether he's going to die soon from it, now part of his carceral experience is having to receive this invasive medical treatment three days a week. That wasn't part of his sentence, but that is his experience now. And I think that given that, him having served 22 years already on this charge, the sentencing needs have been met. And I see that I'm out of time. If there are no further questions, I would respectfully request that the court vacate the district court's order and remand for reconsideration. Thank you. Thank you. Again, I have nothing further to offer beyond what Mr. Shelley presented. Mr. Shelley may have your job when you get back to the office. I will thank all counsel for their excellent arguments and their submissions. We'll take this case under advisement.